UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DAVID OBERGFELL and JACQUELYN OBERGFELL, individually and on behalf of all others similarly situated,<br><br>PLAINTIFFS,<br><br>v.<br><br>VOLVO CARS OF NORTH AMERICA, LLC,<br><br>DEFENDANT. | § § § § § § § § § § § § § § § | CASE NO. |

## PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

Plaintiffs David Obergfell and Jacquelyn Obergfell, individually and on behalf of a Class of similarly situated consumers, allege:

### I. INTRODUCTION

1. Since at least 2014, Defendant Volvo Cars of North America, LLC ("Volvo") has built and sold cars equipped with rear cameras intended to enable drivers to see the area behind their vehicles when they drive in reverse. A properly-functioning rear camera projects a video image onto a screen located in the car near the driver, giving the driver a real-time view behind the car that helps the driver back up. A rear camera is a safety feature for which Plaintiffs and other consumers pay a premium.

2. Upon information and belief, the rear cameras in Volvo cars are defective. The defect manifests by preventing the video image from displaying properly on the screen, or the image will freeze, or no image will display at all.

3. Volvo knows about this defect, but Volvo has not remedied it, even

though it is plainly obligated by warranty to do so. This case seeks redress for the harm caused by Volvo's breach of warranty.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d) because the Class consists of more than 100 members, the amount in controversy exceeds the sum or value of five million dollars ($5,000,000.00) exclusive of recoverable interest and costs, and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant's principal place of business is located in this District.

## III. PARTIES

6. Plaintiffs David Obergfell and Jacquelyn Obergfell reside in Dallas, Texas. The Obergfells bring this action individually and as representatives of a Class of similarly situated consumers.

7. Defendant Volvo Cars of North America, LLC (referred to throughout this Complaint as "Defendant" or "Volvo") is a Delaware limited liability company with its principal place of business in Rockleigh, New Jersey. It is a subsidiary of Volvo Car Corporation of Gothenburg, Sweden, which is a subsidiary of Geely Auto of Hangzhou, China.

8. Volvo, including its owners, employees, parent companies, subsidiaries, affiliates, and agents, developed, designed, manufactured, assembled, tested, inspected, marketed, promoted, advertised, warranted, distributed, and sold vehicles branded "Volvo."

9. Volvo conducts substantial business within New Jersey and throughout the United States through the marketing, distribution, and sale of Volvo-branded vehicles.

## IV. FACTS

10. The Obergfells bought a new 2014 Volvo XC90 on or about October 8, 2014 from Park Place Volvo, an authorized Volvo dealer in Dallas, Texas.

11. Shortly after purchasing their XC90, the Obergfells experienced problems with the vehicle's rear camera. Specifically, when they put the vehicle in reverse, the navigation screen inside their vehicle would not display an image. This is contrary to the purpose of a rear camera, which is to enable a driver to see behind the vehicle while driving in reverse.

12. The Obergfells brought the problem with the non-functioning rear camera to Volvo's attention by bringing their XC90 back to Park Place Volvo for inspection and repairs.

13. Specifically, on or about October 25, 2014, the Obergfells brought their XC90 to Park Place Volvo and, according to Park Place Volvo's notes, informed it that "when putting vehicle in reverse back up camera screen would not come up." A copy of this note is attached as Exhibit 1.

14. Park Place Volvo attempted a repair, but it did not fix the problem. The Obergfells continued to encounter problems with the rear camera. Specifically, on or about August 10, 2015, the Obergfells again brought their XC90 to Park Place Volvo and, according to Park Place Volvo's notes, informed it that "back up camera will not always work … put in reverse screen comes up but no picture." A copy of this note is attached as Exhibit 2.

15. On or about August 12, 2015, according to Park Place Volvo's notes, the Obergfells informed it that "back up camera is not working will not activate when in reverse, has had since last visit intermittently." A copy of this note is attached as Exhibit 3.

16. Park Place Volvo attempted another repair, but it, too, did not resolve the problem. On or about September 17, 2015, the Obergfells again returned their XC90 to Park Place Volvo to address the problem and, according to Park Place Volvo's notes, informed it that "backup camera will freeze and glitch." A copy of this note is attached as Exhibit 4.

17. On or about September 22, 2015, according to Park Place Volvo's notes, the Obergfells informed it that "after previous repairs the navigation screen will not come up in reverse to see back up camera -- intermittently." A copy of this note is attached as Exhibit 5.

18. On or about May 24, 2016, the Obergfells again brought their XC90 to Park Place Volvo because of the rear camera still would not function properly. Park Place Volvo documented the action it took on the "pre-invoice" attached at Exhibit 6. The notes reflect—three different times—that "Volvo knows there is an issue but there is no fix at this time." Exhibit 6.

19. On or about June 8, 2016, John Roberts, Service Manager at Park Place Volvo, signed a written, notarized acknowledgment of the numerous, unsuccessful attempts to resolve the problems with the rear camera, as well as Volvo's knowledge of the problems. A copy of this document is attached as Exhibit 7. Mr. Roberts states: "There is an intermittent rear camera not displaying the image when in reverse. Through

4

multiple attempts to remedy the situation with a new park assist module installed, new camera installed, and calibration, the car still has symptoms of original concern on intermittent failure. … After assistance with tech hotline, we have been informed that Volvo is still working on a solution and nothing else remains to be performed at this time." Exhibit 7.

20. When the Obergfells bought their Volvo XC90, Volvo gave them a warranty. A copy of the warranty is attached as Exhibit 8.

21. The warranty period is four years or 50,000 miles, whichever occurs first. Exhibit 8 (page 37). The warranty requires Volvo to repair vehicles due to defects in material or workmanship. Exhibit 8 (page 37).

22. Every time the Obergfells experienced a problem with the rear camera of their XC90 and brought it to Park Place Volvo for repair, their vehicle was within the warranty period.

23. On information and belief, Volvo has manufactured and sold many thousands of vehicles with the same defect, and has failed to correct it. Consumers have complained about experiences similar to what happened to the Obergfells.

24. For example, one consumer posted:

Last year my husband bought a new 2014 XC90. … The car has been back to the dealer three times and they always say "they can't replicate the problem". … Back-up camera sometimes does not come up at all when the car is in reverse and the image does not appear to be clear. Dealer said it was a software issue and that they updated the software but my husband swears it is still not working properly.[1]

---

[1] Comment posted by "twovolvofamily" on November 12, 2015 10:41pm, retrieved from http://www.matthewsvolvosite.com/forums/viewtopic.php?t=72996 (last accessed December 6, 2016).

25. The quoted comment is only a small portion among the many similar consumer complaints documented online. The results of a google search for "volvo rear view camera problem" furnishes a searcher with more than 20 links on the first page alone.[2]

26. Like all other drivers who bought Volvo vehicles with rear cameras, the Obergfells paid a premium for the safety feature.

## V. CLASS ALLEGATIONS

27. Plaintiffs seek to represent the following Class:

All persons in the United States who are current or former owners or lessees of a Volvo-branded car marketed, distributed, and/or sold by Defendant with a rear camera during the applicable limitations period. Excluded from the Class is Defendant and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the Judge to whom this case is assigned and her immediate family.

Plaintiff reserves the right to revise the Class definition based upon information learned through discovery.

28. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

29. This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

30. <u>Numerosity</u>. Federal Rule of Civil Procedure 23(a)(1): The members of the Class are so numerous and geographically dispersed that individual joinder of all

---

[2] https://www.google.com/?gws_rd=ssl#q=volvo%20rear%20view%20camera%20problems (last accessed December 7, 2016).

Class members is impracticable. While Plaintiffs are informed and believe that there are not less than tens of thousands of members of the Class, the precise number of Class members is unknown to Plaintiffs, but may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

31. <u>Commonality and Predominance</u>. Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3): This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a) Whether Defendant engaged in the conduct alleged herein;

b) Whether Defendant designed, advertised, marketed, distributed, sold, or otherwise placed defective Volvo-branded cars into the stream of commerce in the United States;

c) Whether Defendant's conduct violates warranty laws as asserted herein; and

d) Whether Plaintiff and the other Class members are entitled to damages and other monetary relief.

32. <u>Typicality</u>. Federal Rule of Civil Procedure 23(a)(3): Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Defendant's wrongful conduct as described above.

33. <u>Adequacy</u>. Federal Rule of Civil Procedure 23(a)(4): Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Class they seek to represent; Plaintiffs have retained counsel

competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

34. <u>Superiority</u>. Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## COUNT I
## BREACH OF EXPRESS WARRANTY

35. Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

36. Plaintiffs bring this Count on behalf of the Class.

37. In its warranty, Volvo expressly warrants its cars against "defects in material or workmanship" when sold to retail purchasers.

38. Volvo also expressly warrants that it will repair defective cars at no cost to

8

the owner when defects are brought to its attention within the first four years or 50,000 miles after the initial retail sale.

39. The terms of Volvo's warranty became part of the basis of the bargain with Plaintiffs and all other Class members when they decided to buy a Volvo-branded car.

40. Volvo breached its warranty to Plaintiffs and the Class members when it sold them cars in a defective state, and when its authorized representatives failed to properly repair, replace, or adjust malfunctioning cars to a non-defective state.

41. Because of their rear camera defects, the Volvo-branded cars were defective and, thus, did not adhere to Volvo's warranty when first sold; also, they have not been remedied as originally warranted since the time of sale.

42. By breaching its express warranty, Volvo caused and continues to cause the warranty to fail of its essential purpose.

43. Volvo has been given a reasonable opportunity to cure its breach of the warranty.

44. As a direct and proximate result of Volvo's breach of warranty, Plaintiffs and the Class members have been damaged in an amount to be determined at trial.

## COUNT II
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

45. Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

46. Plaintiffs bring this Count on behalf of the Class.

47. Volvo is and was at all relevant times a "merchant" as defined under the

Uniform Commercial Code ("UCC").

48. Defendant's Volvo-branded cars are "goods" as defined under the UCC.

49. Volvo impliedly warranted that its Volvo-branded cars were of a merchantable quality.

50. Volvo breached the implied warranty of merchantability, as the Volvo-branded cars were not of a merchantable quality due to the defect and the associated problems caused by the defect.

51. As a direct and proximate result of Volvo's breach of the warranty of merchantability, Plaintiffs and the Class were injured and are entitled to damages, in an amount to be proved at trial.

52. Any attempt by Volvo to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here because Volvo knowingly sold a defective product without informing consumers about the defect.

## COUNT III
## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT,
## 15 U.S.C. §§ 2301, *et seq.*

53. Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

54. Plaintiffs bring this Count on behalf of the Class.

55. Plaintiffs and the Class are "consumers" who purchased "consumer products" for purposes of 15 U.S.C. §§ 2301(1) and (3) because they purchased Volvo-branded cars for personal, family, or household purposes and are entitled to invoke Volvo's warranty.

56. Volvo is a "supplier" and "warrantor" within the meaning of 15 U.S.C. §§ 2301(4) and (5) because it regularly sells Volvo-branded cars accompanied by the written Volvo warranty.

57. The amount in controversy of Plaintiffs' individual claims meets or exceeds $25.00 in value. In addition, the amount in controversy of the claims of the Class meets or exceeds $50,000 in value (exclusive of interest and costs).

58. Volvo violated the Magnuson-Moss Warranty Act when it failed to honor its written warranty obligations in the Volvo warranty by delivering Volvo-branded cars that suffered from the rear camera defect described in detail above.

59. Volvo specifically warranted its Volvo-branded cars against "defects in material or workmanship" at the time of retail sale and for an additional four years or 50,000 miles.

60. The terms of Volvo's written warranty became part of the basis of the bargain with Plaintiffs and all other Class members when they decided to buy a Volvo-branded car.

61. Volvo breached its warranty to Plaintiffs and the Class members when it sold them cars in a defective state, and when its authorized representatives failed to properly repair, replace, or adjust malfunctioning cars to a non-defective state.

62. Volvo also extended an implied warranty of merchantability on its Volvo-branded cars at the time of sale and for the first four years or 50,000 miles.

63. Volvo breached the implied warranty of merchantability, as the Volvo-branded cars were not of a merchantable quality due to the defect and the associated problems caused by the defect.

64. As a direct and proximate result of Volvo's breach of warranty and the implied warranty of merchantability, Plaintiffs and the Class were injured and are entitled to damages, in an amount to be proved at trial.

65. Plaintiffs and the Class also seek all equitable remedies available pursuant to 15 U.S.C. § 2310(d)(1), statutory attorney fees and other litigation costs pursuant to 15 U.S.C. § 2310(d)(2), as well as all other relief allowed by law.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the Class, respectfully request that the Court enter judgment in their favor and against Defendant, as follows:

A. Granting certification of the proposed Class, including appointment of Plaintiffs' counsel as Class Counsel;

B. Awarding damages in an amount to be determined at trial;

C. Awarding all equitable remedies available pursuant to 15 U.S.C. § 2310(d)(1);

D. Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded;

E. Awarding costs and attorneys' fees; and

F. Ordering such other or further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all claims so triable.

## CERTIFICATION

Pursuant to Local Civil Rule 11-2, I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

DATED this 10th day of January, 2017.  Respectfully submitted,

/s/ *Christopher Markos*
Christopher Markos (SBN 022282010)
cmarkos@wcblegal.com
WILLIAMS CUKER BEREZOFSKY, LLC
Woodland Falls Corporate Center
210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002-1163
856.667.0500
856.667.513 (fax)

Michael J. Quirk
mquirk@wcblegal.com
*Pro Hac Vice Forthcoming*
WILLIAMS CUKER BEREZOFSKY, LLC
1515 Market Street, Suite 1300
Philadelphia, PA 19102
215.557.0099
215.557.0673 (fax)

Marc R. Stanley
marcstanley@mac.com
*Pro Hac Vice Forthcoming*
Martin Woodward
mwoodward@stanleylawgroup.com
*Pro Hac Vice Forthcoming*
STANLEY LAW GROUP
6116 N. Central Expwy., Suite 1500
Dallas, TX  75206
214.443.4300
214.443.0358 (fax)

Dean Gresham
dean@stecklerlaw.com
*Pro Hac Vice Forthcoming*
STECKLER GRESHAM COCHRAN
12720 Hillcrest Road, Suite 1045
Dallas, TX  75230
972.387.4040
972.387.4041 (fax)

*Counsel for Plaintiff and the Class*